# IN THE SUPREME COURT OF IOWA

No. 15–1255

Filed January 20, 2017

**STATE OF IOWA,**

    Plaintiff,

vs.

**IOWA DISTRICT COURT FOR SCOTT COUNTY,**

    Defendant.

---

Certiorari to the Iowa District Court for Scott County, Christine Dalton, Judge.

The State seeks certiorari review of the denial of an order requiring restitution of law enforcement response costs following the defendant's conviction for operating while intoxicated. **WRIT ANNULLED.**

Thomas J. Miller, Attorney General, Martha E. Trout, Assistant Attorney General, Michael Walton, County Attorney, and Steve Berger, Assistant County Attorney, for plaintiff.

Mark C. Smith, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for defendant.

**MANSFIELD, Justice.**

This case requires us to interpret a special restitution law that applies to operating while intoxicated (OWI) cases. This law provides that the court "may order restitution paid to any public agency for the costs of the emergency response resulting from the actions constituting a violation of [the OWI statute]." Iowa Code § 321J.2(13)(*b*) (2014). Here, an officer on regular nighttime patrol stopped the defendant's vehicle after observing she was driving erratically and had run a red light. The driver was arrested for and ultimately convicted of OWI, second offense. *See id.* § 321J.2(1)(*a*), (2)(*b*). The State sought $54.50 in restitution for the costs of this traffic stop and subsequent processing at the police station. The district court denied the request, ruling "there was no emergency in this case."

On our review, we agree with the district court. The legislature has defined "emergency response" as "any incident requiring response by fire fighting, law enforcement, ambulance, medical, or other emergency services." *Id.* § 321J.2(13)(*b*). Contrary to the State, we do not read this definition as authorizing recovery of the costs of any law enforcement response, but only a response to something that meets the normal definition of an emergency. Routine law enforcement activities do not qualify. Therefore, we annul the writ.

## I. Background Facts and Proceedings.

According to the minutes of testimony, Davenport Police Officer Jennifer Brewer was on overnight patrol in the early morning hours of November 1, 2014. She observed a black Mercury Mountaineer speed up and slow down several times as it drifted between lanes of traffic. Officer Brewer then saw the vehicle slowly run a red light and almost collide

with another car. The officer activated the emergency lights on her squad car and pulled over the vehicle.

Officer Brewer approached the vehicle to speak with its driver, Esther Arriaga. The officer noticed Arriaga's eyes were watery and bloodshot and she was slurring her speech. Arriaga admitted she was drunk and thanked Officer Brewer for stopping her vehicle. As Arriaga exited the vehicle, Officer Brewer also detected the odor of an alcoholic beverage coming from her. In addition, Arriaga was unsteady on her feet and not wearing shoes.

Officer Brewer transported Arriaga to the Scott County Jail. There, Arriaga failed both a horizontal gaze nystagmus (HGN) test and a preliminary breath test. After making several phone calls, Arriaga refused to provide a breath sample for the chemical test. She was arrested for OWI, second offense.

Arriaga later pled guilty to OWI second in violation of Iowa Code section 321J.2(1)(*a*) and (2)(*b*). Before Arriaga's sentencing, the State submitted a form entitled "emergency response restitution" on behalf of the Davenport Police Department pursuant to Iowa Code section 321J.2(13)(*b*). The form requested restitution for the costs of Officer Brewer's time and the time her squad car was in use during the traffic stop, arrest, and processing of Arriaga at the jail. Arriaga resisted the State's request and disputed that Officer Brewer's response was an "emergency response" within the meaning of the statute. The court scheduled a separate hearing on the State's request for restitution.

At the restitution hearing, Officer Brewer testified that she initiated the traffic stop on Arriaga's vehicle at approximately 3:39 a.m. on November 1. Brewer acknowledged Arriaga had not caused an accident, but testified she made the stop "because [she] felt that [Arriaga] was

going to end up hurting someone." Officer Brewer testified she had been dispatched on another call prior to the stop, but ultimately ignored the call in order to pull over Arriaga.

Officer Brewer explained that she left the jail approximately one hour after the initial vehicle stop, having finished dealing with Arriaga. Brewer then completed paperwork and reports related to the stop and arrest. Brewer testified that her normal duties as a patrol officer included initiating traffic stops, arresting individuals, and filling out paperwork. The State's restitution request on behalf of the city of Davenport thus covered two-and-a-half hours of Officer Brewer's time (at an hourly rate of $19) and one hour for the use of the Brewer's squad car (at an hourly rate of $7) for a total of $54.50.[1]

In a written ruling, the district court denied the State's claim for restitution. The court characterized the present case as "a typical OWI traffic stop in every way. There was no accident necessitating extra officers, fire or medic." The court added that Officer Brewer "was not responding to an emergency, she was investigating a crime." The court therefore concluded,

> [T]he Iowa Legislature did not intend the routine arrest and processing of a Defendant to be subject to an emergency response restitution claim. If the legislature wanted to include nonemergency routine traffic stop activity, it would have said the cost of any response and not add the limiting language of "emergency." The legislature purposefully defined "emergency response" broadly to capture the often unique responses fire, medical, and law enforcement must have to these incidents. Not every emergency involves an accident, although that is typically the case. . . . The broadness of the Iowa definition was merely a way to include those weird, unique, case specific responses that happen

---

[1]The court also received testimony from a commander with the Davenport Police Department supporting the department's calculation of hourly rates for its officers and squad cars.

even when there is no accident as a result of the violation. It is over reaching to include the routine traffic stop, investigation, and processing in the definition of "emergency response."

Thereafter, the State filed a petition for writ of certiorari with this court.[2] *See* Iowa R. App. P. 6.107(1). We granted the petition.

## II. Scope and Standard of Review.

"We review rulings on questions of statutory interpretation for correction of errors at law." *State v. Olutunde*, 878 N.W.2d 264, 266 (Iowa 2016) (quoting *In re R.D.*, 876 N.W.2d 786, 791 (Iowa 2016)). We also review restitution orders for correction of errors at law. *State v. Hagen*, 840 N.W.2d 140, 144 (Iowa 2013). "In reviewing a restitution order 'we determine whether the court's findings lack substantial evidentiary support, or whether the court has not properly applied the law.'" *Id.* (quoting *State v. Bonstetter*, 637 N.W.2d 161, 165 (Iowa 2001)).

## III. Analysis.

**A. The Statute at Issue.** Iowa Code section 321J.2(13)(*b*) provides,

> The court may order restitution paid to any public agency for the costs of the emergency response resulting from the actions constituting a violation of this section, not exceeding five hundred dollars per public agency for each such response. For the purposes of this paragraph, "*emergency response*" means any incident requiring response by fire fighting, law enforcement, ambulance, medical, or other emergency services. A public agency seeking such restitution shall consult with the county attorney regarding the expenses incurred by the public agency, and the county attorney may include the expenses in the statement of pecuniary damages pursuant to section 910.3.

---

[2]The State filed a single petition that encompassed three separate Scott County OWI cases. In each case, the district court had denied the State's request for emergency response restitution based on a similar interpretation of section 321J.2(13)(*b*). We later divided the matter into three separate appeals. We are deciding the other two appeals today by unpublished per curiam opinions.

Iowa Code § 321J.2(13)(*b*) (2014). The dispute here can be summarized quickly. The State contends that "emergency response" as used in this subsection is a term of art that encompasses any required response by law enforcement. Arriaga maintains that "emergency response" is limited to situations where an especially urgent response was required, as opposed to a routine traffic stop.

We have not previously interpreted section 321J.2(13)(*b*). It was enacted by the legislature in 1997. *See* 1997 Iowa Acts ch. 177, § 5 (now codified at Iowa Code § 321J.2(13)(*b*)).[3]

This statute was part of a large omnibus bill aimed at reforming Iowa's OWI laws. *See* 1997 Iowa Acts ch. 177. Many provisions increased the punishments for OWI offenses. For example, the legislation raised minimum fines for first-offense OWI, made revocation of the offender's driver's license mandatory, and imposed automatic referrals to treatment programs. *See id.* § 4 (now codified at Iowa Code § 321J.2(3)). The legislation also prohibited deferred judgments, deferred sentencing, or suspended sentences in a variety of circumstances, including for second-time offenders and those who refused to consent to testing required by section 321J.6. *See id.* (now codified at Iowa Code § 321J.2(3)(*b*)(2)). In addition, the legislature increased the punishment for the offense of vehicular homicide while intoxicated from a class "C" felony to a class "B" felony. *Id.* § 26.

Prior to the 1997 legislation, an offender convicted of OWI was required to pay victim restitution "in an amount not to exceed two thousand dollars." Iowa Code § 321J.2(8) (1997). However, the

---

[3]Nor have we interpreted section 462A.14, which is identically worded and applies to violations for boating while intoxicated. *See* Iowa Code § 462A.14(9)(*b*) (2014).

legislation removed this cap on victim restitution, instead requiring unlimited victim restitution "[i]n addition to any fine or penalty imposed under [chapter 321J]." 1997 Iowa Acts ch. 177, § 5 (now codified at Iowa Code § 321J.2(13)(*a*)).

Meanwhile, the same legislation authorized restitution to public agencies but capped it at "five hundred dollars per public agency for each such response." *Id.* § 5 (now codified at Iowa Code § 321J.2(13)(*b*)). While restitution to victims remained mandatory, restitution to public agencies was entrusted to the discretion of the district court. *See id.* ("The court *may* order restitution paid to any public agency . . . ." (Emphasis added.)).

**B. Interpreting the Statute.** Our first step when interpreting a statute is to determine whether it is ambiguous. *See Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 71–72 (Iowa 2015). "[W]here the language chosen by the legislature is unambiguous, we enforce a statute as written." *Rhoades v. State*, 880 N.W.2d 431, 446 (Iowa 2016). On the other hand, "[a] statute is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute." *Iowa Ins. Inst.*, 867 N.W.2d at 72 (quoting *Mall Real Estate, L.L.C. v. City of Hamburg*, 818 N.W.2d 190, 198 (Iowa 2012)). "[T]he determination of whether a statute is ambiguous does not necessarily rest on a close analysis of a handful of words or a phrase utilized by the legislature, but involves consideration of the language in context." *Rhoades*, 880 N.W.2d at 446; *see also Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 425 (Iowa 2010) ("Ambiguity may arise from specific language used in a statute or when the provision at issue is considered in the context of the entire statute or related statutes." (quoting *Midwest Auto. III, LLC v. Iowa Dep't of Transp.*, 646 N.W.2d 417, 425 (Iowa 2002))).

This case comes down to the meaning of "emergency response," a term that the legislature has defined for us. *See* Iowa Code § 321J.2(13)(*b*) (2014). It is a well-settled principle of statutory interpretation that "[w]hen the legislature has defined words in a statute—that is, when the legislature has opted to 'act as its own lexicographer'—those definitions bind us." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014) (quoting *State v. Fischer*, 785 N.W.2d 697, 702 (Iowa 2010)); *see Cedar Rapids Cmty. Sch. Dist. v. Parr*, 227 N.W.2d 486, 495 (Iowa 1975) ("It is . . . axiomatic the legislature may be its own lexicographer."). As a corollary to this principle, when a statute defines a term, "the common law and dictionary definitions which may not coincide with the legislative definition must yield to the language of the legislature." *Sherwin-Williams*, 789 N.W.2d at 425 (quoting *Hornby v. State*, 559 N.W.2d 23, 25 (Iowa 1997)).

Our task, one might say, is to determine which is the dog and which is the tail. The legislature's definition of emergency response covers "any incident requiring response by fire fighting, *law enforcement*, ambulance, medical, or other emergency services." Iowa Code § 321J.2(13)(*b*) (emphasis added); *see Roth v. Evangelical Lutheran Good Samaritan Soc.*, 886 N.W.2d 601, 611 (Iowa 2016) (noting that the term "any action for damages" in Iowa Code section 613.15 is broad). So one possible interpretation of the statute, i.e., the one advanced by the State, is that "law enforcement" services are *per se* included. In that event, "other emergency services" would refer to other public services that are not mentioned expressly in the list but that can be used in emergencies. If the statute is so interpreted, "law enforcement" would be the dog and "other emergency services" would be the tail.

However, an alternative interpretation is possible, namely, the one put forward by Arriaga. Under this alternative, "law enforcement" services would be reimbursable only if an actual emergency existed. In other words, "emergency" would be the dog and "law enforcement" would be the tail, because the former term would restrict the scope of the latter.

We think both interpretations are reasonable and, hence, the statute is ambiguous. Therefore, we resort to our customary tools for construing ambiguous statutes.

Two of our canons of construction are *ejusdem generis* and *noscitur a sociis*. Usually, these two canons operate in the same direction. Here, however, the State is relying on *ejusdem generis* whereas Arriaga is relying on *noscitur a sociis.*

The State urges that the phrase "law enforcement" is clear and specific and speaks for itself. According to the State, the catchall at the end of the sentence—"other emergency services"—is general and should be read in light of the entire list of preceding terms, including "law enforcement." *See In re Estate of Sampson*, 838 N.W.2d 663, 670 (Iowa 2013) (noting that "[u]nder the doctrine of *ejusdem generis*, general words which follow specific words are tied to the meaning and purpose of the specific words" (alteration in original) (quoting *Iowa Comprehensive Petroleum Underground Storage Tank Fund Bd. v. Shell Oil Co.*, 606 N.W.2d 376, 380 (Iowa 2000)).

Arriaga, on the other hand, maintains that "law enforcement" should draw its meaning from the terms both before and after it. Thus, in her view, it should be qualified and limited to *emergency* law enforcement services, not routine patrol stops. *See Mall Real Estate*, 818 N.W.2d at 199 (recognizing the canon of *noscitur a sociis*, in which "the

meanings of particular words may be indicated or controlled by associated words").

In addition to these dueling canons, other principles of statutory construction are potentially relevant. The object of a law matters. *See* Iowa Code § 4.6(1) (providing that the court in determining legislative intent may consider "[t]he object sought to be attained"). In this regard, "[w]e . . . construe chapter 321J 'liberally or reasonably' to protect the public by reducing 'the hazard of prohibited operation of a motor vehicle to a minimum.' " *Bearinger v. Iowa Dep't of Transp.*, 844 N.W.2d 104, 108 (Iowa 2014) (quoting *State v. Comried*, 693 N.W.2d 773, 775 (Iowa 2005)). We have long recognized that "[t]he main purpose of chapter 321J is to promote public safety by removing dangerous drivers from the highways." *Id.* at 107 (quoting *State v. Vogel*, 548 N.W.2d 584, 587 (Iowa 1996)); *see also* Iowa Code § 321J.23(2) ("The general assembly finds and declares . . . [p]rompt intervention is needed to protect society, including drivers, from death or serious long-term injury."). A liberal construction of Iowa Code section 321J.2(13)(*b*) might tend to support the State's position.

Yet we also have a rule of lenity in the criminal law. *See State v. Hoyman*, 863 N.W.2d 1, 18 (Iowa 2015). We have said this applies to criminal restitution. *See Hagen*, 840 N.W.2d at 146 (stating in a restitution case while ultimately ruling against the defendant that "[w]e adhere to the rule of lenity, which guides us to resolve ambiguous criminal statutes in favor of the accused").

Another rule of construction is that we look at statutes as a whole. *See Iowa Ins. Inst.*, 867 N.W.2d at 72 ("[W]e read statutes as a whole rather than looking at words and phrases in isolation."). Other parts of Iowa Code section 321J.13(*b*) may give us clues as to the extent to which

law enforcement costs are recoverable.  In fact, under Iowa Code section 321J.2(13)(*b*), restitution cannot exceed $500 per agency and is at the discretion of the court.  *See* Iowa Code § 321J.2(13)(*b*).  This might imply that the legislature intended the restitution to be used for extraordinary expenses, such as would be incurred in a true emergency, rather than the costs of typical law enforcement.

Practicality is also important.  Generally, we try to interpret statutes so they are reasonable and workable.  *Jacobs v. Iowa Dep't of Transp.*, 887 N.W.2d 590, 597 (Iowa 2016) (recognizing that we "interpret our statutes . . . so they effectuate just and reasonable results, not arbitrary ones"); *see also* Iowa Code § 4.4(3) (setting forth a presumption that "[i]n enacting a statute . . . [a] just and reasonable result is intended"); *id.* § 4.6(5) (providing that the court may consider "[t]he consequences of a particular construction" of an ambiguous statute).  If the legislature had wanted law enforcement expense to be recoverable in virtually every OWI case, it would have made more sense to fix a standard restitution amount.  It strikes us as inefficient to be regularly litigating in district court amounts as small as or even smaller than $54.50.[4]  The value of the time devoted to the litigation can easily exceed the sum for which recovery is sought.  This consideration appears to favor Arriaga.

As the foregoing shows, each side has presented plausible arguments in favor of its construction of Iowa Code section 321J.2(13)(*b*).  Ultimately, though, we are swayed by the legislature's use of the word

---

[4]The restitution came to $54.50 only because the Davenport Police Department included Officer Brewer's processing and paperwork time.  Arriaga raises a separate argument, which we do not address, that such time should not be recoverable even if the department could get restitution for the roadside stop itself.

"emergency" *both* in the term to be defined—i.e., "emergency response"—*and* in the definition—i.e., "other emergency services." This tells us that "emergency" is the dog and "law enforcement" is the tail.

Because the general assembly has baked into the statute a definition of "emergency response," that definition would prevail even if it varied from a traditional meaning of the term. However, the legislature has also employed the phrase "other emergency services" within its own definition. In our view, by putting the word "emergency" on both sides of the equation, the legislature intended to make the point that all the services in the list are covered only when they have been provided in an emergency as commonly defined. To put it another way, if the legislature's definition of a term is partially circular, in that it repeats a word to be defined within the definition itself, we need to look outside the definition to ascertain the meaning of that word. *See SZ Enters., LLC v. Iowa Utils. Bd.*, 850 N.W.2d 441, 475 (Iowa 2014) (Mansfield, J., dissenting).

"We presume statutes or rules do not contain superfluous words." *State v. McKinley*, 860 N.W.2d 874, 882 (Iowa 2015); *see also* Iowa Code § 4.4(2) (setting forth the presumption that "[t]he entire statute is intended to be effective"). Under the State's interpretation, at least one of the two uses of "emergency" is rendered superfluous. If the legislature had wanted all law enforcement responses to OWI incidents to be covered, it would have been more logical to omit "emergency" either from the phrase "emergency response" or from the phrase "other emergency services."

Notably, Illinois and California appellate courts also have confined OWI-related public agency restitution to *bona fide* emergencies. Both states by law authorize restitution for the costs of an "emergency

response," although their statutes are worded somewhat differently from Iowa's.

Illinois law requires emergency response restitution from any person convicted of OWI "whose operation of a motor vehicle while in violation of that Section proximately caused any incident resulting in an appropriate emergency response."  625 Ill. Comp. Stat. Ann. 5/11-501.01(c) (West, Westlaw through P.A. 99-920 of 2016 Reg. Sess.).  The statute further defines "emergency response" as "any incident requiring a response by a police officer, a firefighter carried on the rolls of a regularly constituted fire department, or an ambulance."  *Id.* § 11-501.01(i).

In *People v. Korzenewski*, the Illinois Appellate Court held that a traffic stop for speeding did not provide a basis for restitution.  970 N.E.2d 90, 100 (Ill. App. Ct. 2012).  The court explained, "While defendant was driving 19 miles per hour over the speed limit, [the officer] conducted a routine traffic stop—he was not responding to an emergency that required an urgent response."  *Id.*  Significantly, the Illinois court reached this conclusion even though "emergency response" under the Illinois statute includes "any incident requiring response by a police officer," without adding the phrase "or other emergency services."  *See* 625 Ill. Comp. Stat. Ann. 5/11-501.01(i).  The Illinois court elaborated,

> To interpret the emergency response statute as the State wants us to would result in a finding that any person who is pulled over by a police officer for the violation of any traffic law and is ultimately charged with driving under the influence could be required to make restitution to the police department that initiated the traffic stop.  This result was clearly not intended by the legislature.

*Korzenewski*, 970 N.E.2d at 100.

Another Illinois Appellate Court decision has reached the same destination, but by a somewhat different path.  In *People v. Allen*, the

court ruled that the phrase "proximately caused any incident" meant the OWI violation had to be separate from the "incident." *See* 977 N.E.2d 1286, 1289–90 (Ill. App. Ct. 2012). The appellate court rejected the State's argument that mere traffic violations—such as the defendant's running a stop sign and failing to stay within the lane markers on the road—could form a discrete "incident" under the statute, thereby enabling the State to recover the costs of an OWI traffic stop. *Id.* at 1290–91. The court concluded, "As there was no distinct injurious incident, the restitution was improperly imposed." *Id.* at 1291. Iowa's statute, we should note, uses the same word "incident" in the second sentence, although not in the first. *See* Iowa Code § 321J.2(13)(*b*).

California has a similar OWI restitution scheme to that of Illinois. The restitution obligation is triggered when a person's OWI "proximately causes any incident resulting in an appropriate emergency response." Cal. Gov't Code § 53150 (West, Westlaw through 2016 Reg. Sess., Ch. 8 of 2015-2016 2d Ex. Sess., and all propositions on 2016 ballot). Focusing on this language, the California Court of Appeal has determined that the impaired driving and the "incident" must be distinct events in order to authorize restitution. *Cal. Highway Patrol v. Superior Ct.*, 38 Cal. Rptr. 3d 16, 23 (Ct. App. 2006) ("Any other reading would render the word 'incident' superfluous . . . ."). The court in that case rejected the State's argument that an arrest following a traffic stop, by itself, could qualify as an "incident." *Id.* The court reasoned that if the California legislature had intended such a result "it could have provided simply that a person is liable for costs incurred by a public agency responding to that person's operating of a vehicle while intoxicated." *Id.*

An "emergency" is commonly defined as "an unforeseen combination of circumstances or the resulting state that calls for

immediate action," or "an urgent need for assistance or relief." *Emergency, Merriam–Webster's Collegiate Dictionary* (10th ed. 2002). For law enforcement costs to be recoverable as restitution from a convicted OWI defendant in Iowa, the response must have been to that kind of emergency. One example would be an automobile accident that involved actual or potential injuries or that blocked a road.

In contrast, a routine stop for traffic violations is not generally considered an emergency. In *Stych v. City of Muscatine*, the United States District Court for the Southern District of Iowa concluded as much in the context of the "emergency response" immunity defense in Iowa Code section 670.4. 655 F. Supp. 2d 928, 938 (S.D. Iowa 2009); *see* Iowa Code § 670.4(1)(*k*) (providing immunity to a municipality for any claim "based upon or arising out of an act or omission in connection with an emergency response"). While the court in that case did not "discount the potential hazards that *could* arise" from traffic violations, the court reasoned that "[i]f routine traffic violations . . . are deemed emergencies, there is little doubt that the emergency response *exception* would swallow the rule." *Stych*, 655 F. Supp. 2d at 936, 938. We take a similar view as to section 321J.2(13)(*b*).

**C. Applying the Interpretation to This Case.** We must now apply our construction of Iowa Code section 321J.2(13)(*b*) to the facts of this case. We find there was no emergency response by law enforcement within the meaning of the statute. No accident had occurred, and no one had made a 911 call. Officer Brewer was on routine patrol, and she stopped Arriaga's vehicle after witnessing her violate a traffic law and engage in erratic driving. We certainly make no criticism of Officer Brewer's actions. The stop was proper, indeed commendable, because it

removed a drunk driver from the highways. But this is not the type of case for which public agency restitution is statutorily authorized.

**IV. Conclusion.**

For the reasons stated, we annul the writ.

**WRIT ANNULLED.**