# IN THE COURT OF APPEALS OF IOWA

No. 19-1852
Filed March 17, 2021


**LARRY C. BEVERAGE, Individually and as Personal Representative of the Estate of CHARLES E. BEVERAGE, deceased, LINDA K. ANDERSON, and BONNIE K. VALENTINE,**
        Plaintiffs-Appellants,

**vs.**

**ALCOA, INC., a Pennsylvania Corporation, and IOWA-ILLINOIS TAYLOR INSULATION, INC., successor-in-interest to IOWA ILLINOIS THERMAL INSULATION, INC., an Iowa Corporation,**
        Defendants-Appellees.
_____


        Appeal from the Iowa District Court for Scott County, Patrick A. McElyea, Judge.


        Charles Beverage's estate and children appeal dismissal of asbestos injury claims. **AFFIRMED.**


        Lisa W. Shirley of Dean Omar Branham Shirley, LLP, Dallas, Texas, and James H. Cook of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, PLC, Waterloo, for appellants.

        Kevin P. Horan, Douglas M. Sinars, and Owen Blood of Sinars Slowikowski Tomaska, LLC, Chicago, Illinois, for appellee Iowa-Illinois Taylor Insulation, Inc.

        Robert M. Livingston and William R. Hughes, Jr. of Stuart Tinley Law Firm, LLP, Council Bluffs, and Donna R. Miller of Miller, Zimmerman & Evans, P.L.C., Des Moines, for appellee Arconic, Inc., f/k/a Alcoa, Inc.

Mark Behrens of Shook, Hardy & Bacon L.L.P., Washington, DC, and Matthew McKinney and Thomas Story of Brown, Winick, Graves, Gross & Baskerville, P.L.C., Des Moines, for amici curiae Iowa Association of Business and Industry, Iowa Insurance Institute, NFIB Small Business Legal Center, and Coalition for Litigation Justice, Inc.

Heard by May, P.J., and Greer and Schumacher, JJ.

**MAY, Presiding Judge.**

Charles Beverage spent many years working inside an aluminum plant. The plant contained asbestos. After Charles's death, his estate and children (Beverage) brought asbestos-related claims against the plant's owner, Alcoa, Inc. (Alcoa), as well as an installer of insulation, Iowa-Illinois Taylor Insulation, Inc. (IITI). The district court concluded Beverage's claims are barred by Iowa Code section 686B.7 (2017). We agree and affirm.

**I. Facts and Prior Proceedings**

Between the 1950s and mid-1970s, Charles was exposed to asbestos while working as an independent contractor inside an aluminum plant. Alcoa owned the plant. IITI installed much of the plant's asbestos insulation.

In 2015, Charles was diagnosed with malignant mesothelioma. He died that October.

In July 2016, Beverage brought a products liability suit against Alcoa and several other defendants (not including IITI) in Missouri state court. Alcoa filed a motion to dismiss based on lack of personal jurisdiction and improper venue. Beverage voluntarily dismissed their Missouri action.

In September 2017, Beverage commenced this action. Beverage named only two defendants: Alcoa and IITI.

Alcoa and IITI filed motions for summary judgment. They claimed Iowa Code section 686B.7(5) provided them immunity. The district court agreed and granted their motions. This appeal follows.

## II. Standard of Review

"Our review is for the correction of legal error." *In re Estate of Franken*, 944 N.W.2d 853, 857 (Iowa 2020). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* at 858 (quoting Iowa R. Civ. P. 1.981(3)).

Summary judgment plays a special role in immunity cases. As our supreme court explained in *Nelson v. Lindaman*:

> Summary judgment is an important procedure in statutory immunity cases because a key purpose of the immunity is to avoid costly litigation, and that legislative goal is thwarted when claims subject to immunity proceed to trial. *See Plumhoff v. Rickard*, [572 U.S. 765, 772] (2014) ("[T]his [immunity] question could not be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost."); *Hlubek*[ *v. Pelecky*], 701 N.W.2d [93,] 98 [(Iowa 2005)] (noting statutory immunity removes the "'fear of being sued'" and affirming summary judgment (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982))). Indeed, in *Hlubek*, we recognized the defendants' observation that "statutory immunity, like common-law immunity, provides more than protection from liability; it provides protection from even having to go to trial in some circumstances." 701 N.W.2d at 96. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

867 N.W.2d 1, 7 (Iowa 2015) (second and third alterations in original).

## III. Discussion

In their appellant brief, Beverage argued (1) the district court incorrectly interpreted section 686B.7(5); (2) alternatively, section 686B.7(5) violates their due process rights under the United States and Iowa constitutions; and (3) alternatively, section 686B.7(5) violates equal protection under the United

States and Iowa constitutions. In their reply brief, however, Beverage expressly stated they are "no longer challenging Iowa Code § 686B.7(5) on equal protection grounds." We treat this as a waiver of Beverage's equal protection arguments. So we focus instead on Beverage's statutory and due process theories.

**A. Statutory Interpretation**

Iowa Code section 686B.7(5) provides: "A defendant in an asbestos action or silica action shall not be liable for exposures from a product or component part made or sold by a third party." We find the Code's meaning in its words. *Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) (noting "in questions of statutory interpretation, '[w]e do not inquire what the legislature meant; we ask only what the statute means'" and "[t]his is necessarily a textual inquiry as only the text of a piece of legislation is enacted into law" (first alteration in original) (citation omitted)); *State v. Childs*, 898 N.W.2d 177, 184 (Iowa 2017) ("Our court 'may not . . . enlarge or otherwise change the terms of a statute as the legislature adopted it.' 'When a proposed interpretation of a statute would require the court to "read something into the law that is not apparent from the words chosen by the legislature," the court will reject it.'" (citations omitted)); *Holland v. State*, 115 N.W.2d 161, 164 (Iowa 1962) ("Ours not to reason why, ours but to read, and apply. It is our duty to accept the law as the legislative body enacts it."); *Moss v. Williams*, 133 N.W. 120, 121 (Iowa 1911) ("We must look to the statute as it is written . . . .").

The district court carefully considered the words of section 686B.7(5), the record before it, and the arguments of the parties. Ultimately, the court concluded

that because the asbestos products at issue were "made or sold by a third party,"[1] section 686B.7(5) provided Alcoa and IITI immunity against Beverage's asbestos-related claims.

On appeal, Beverage claims the district court's interpretation was incorrect in three ways. We address each claim in turn.

**1. Meaning of "defendant" in section 686B.7(5)**

Beverage first argues the district court erred in determining that, in the context of section 686B.7(5), the word "defendant" unambiguously means "any entity sued in an asbestos suit." Rather, in Beverage's view, "a better interpretation is that a 'defendant' is one that makes or sells an asbestos product." Beverage explains:

> This definition of defendant as a product manufacturer is suggested by the modifier to the word "product[":] there is no liability if the product was "made or sold by a third party." Such qualification would only be necessary if the statute contemplated that the "defendant" is one who makes asbestos products.
> The statute is making a distinction between a "product or component part made or sold by a third party" and "a product or component part made or sold by" the defendant.

We disagree. A three-part process helps us decide what "defendant" means in this context. *Cf. De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 168 (Iowa 2016) ("Words or phrases that are [1] undefined in the statute or [2] for which there is no established legal meaning [3] are given their common, ordinary meaning in the context within which they are used." (citation omitted)). First, we consider whether "the legislature has defined" the term "defendant" in the statute.

---

[1] The court identified Johns Mansfield and Eagle-Pitcher as sources of the asbestos products.

*See State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 471 (Iowa 2017). If so, the legislature's definition "bind[s] us." *Id.* (citation omitted). Second, if the legislature has not provided a definition, we consider whether there is an "established legal meaning" for the term. *De Stefano*, 879 N.W.2d at 168. Finally, if a term is "undefined in the statute" and lacks an "established legal meaning," then it should be given its "common, ordinary meaning in the context within which [it is] used." *Id.* (citation omitted).

As Beverage notes, it does not appear the legislature defined the term "defendant" either in section 686B.7 or elsewhere in chapter 686B. So we consider whether "defendant" has an "established legal meaning." *See id.* It does. As Black's Law Dictionary explains, "defendant" means "[a] person sued in a civil proceeding or accused in a criminal proceeding." *Defendant*, *Black's Law Dictionary* (11th ed. 2019). This is "the usual meaning ascribed by" courts to the term. *See State v. Shafranek*, 576 N.W.2d 115, 118 (Iowa 1998). So "[t]he legislature is presumed . . . to intend that meaning unless the context shows otherwise." *Id.*

We do not think "context shows otherwise." *See id.* Beverage describes chapter 686B as a "tort reform law." And its words show it is aimed at regulating civil lawsuits arising from asbestos and silica injuries. In this context, it is only natural for the legislature to use "defendant" to mean "[a] person sued in a civil proceeding." *See Defendant*, *Black's Law Dictionary*. This is the "common, ordinary meaning" of the term "in the context" of civil litigation like this. *De Stefano*, 879 N.W.2d at 168 (citation omitted).

So because Alcoa and IITI were both sued in this civil proceeding, it was right for the district court to treat them as "defendants." Conversely, we reject Beverage's suggestion that the district court should have read "defendant" to encompass only a "manufacturer." "Manufacturer" is not a "common, ordinary meaning" of the term "defendant." *See id.* Nor is "manufacturer" a "usual meaning ascribed by" Iowa courts to the term "defendant." *See Shafranek*, 576 N.W.2d at 118. Nor did our legislature specially define "defendant" to mean only "manufacturers" for purposes of chapter 686B generally or section 686B.7(5) particularly. *See Iowa Dist. Ct.*, 889 N.W.2d at 471. And yet our legislature regularly uses the words "defendant" and "manufacturer," sometimes in the same statute. *See, e.g.*, Iowa Code § 322G.11. For example, in section 686B.3, the legislature used both "defendant" and "manufacturer" in the same section. So "[i]f the legislature intended" for the term "defendant" to mean only "manufacturers," the legislature surely would "have so stated." *See Hansen v. Haugh*, 149 N.W.2d 169, 172 (Iowa 1967).

We have also considered Beverage's argument that "defendant" must mean only those "who make[] asbestos products" because only *they* need protection against suits based on products "made or sold by a third party." As this case demonstrates, though, parties who have not manufactured asbestos products still face asbestos litigation. And the words of section 686B.7(5) show the legislature's intention to limit that litigation by immunizing a substantial range of "defendants," not all of whom manufacture anything. We decline to adopt Beverage's contrary view.

**2. "Bare metal defense"**

Beverage next argues that "while not directly stated in the statute, the meaning and purpose of [s]ection 686B.7(5) is quite clearly the establishment of the 'bare metal defense.'" According to Beverage, the "bare metal defense" is "a common defense raised by manufacturers of equipment that used asbestos parts as wear items that would have to be replaced, often with parts made by 'third parties.'" Beverage further explains "[t]he defense's basic idea is that a manufacturer who delivers a product 'bare metal'—that is without the insulation or other material that must be added for the product's proper operation—is not generally liable for injuries caused by asbestos in later-added materials." *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d 232, 234 (3d Cir. 2017).[2] Or as American Law Reports puts it: "The 'bare metal' defense, an affirmative defense, provides that a manufacturer has no duty to warn about potential dangers from exposure to a part of its product if the manufacturer did not make or distribute the part." Marjorie A. Shields, Annotation, *Application of "Bare Metal" Defense in Asbestos Products Liability Cases*, 9 A.L.R. 7th Art. 2, § 1 (2015).

Because the "bare metal" defense "only applies to product manufacturers," Beverage contends the district court should have interpreted section 686B.7(5) to only protect manufacturers. We disagree for two reasons.

First, as explained above, the words of section 686B.7(5) do not limit its immunity to "manufacturers." So the immunity available under section 686B.7(5)

---

[2] "A classic scenario would be if an engine manufacturer ships an engine without a gasket, the buyer adds a gasket containing asbestos, and the asbestos causes injury to a worker." *In re: Asbestos Prods. Liab. Litig. (No. VI)*, 873 F.3d at 234.

is not the same as that available under "bare metal" defenses, which only apply to manufacturers.  *See id.*

Moreover, while the immunity afforded by section 686B.7(5) may overlap or even encompass the protections available under a "bare metal" defense, we see no reason to think that section 686B.7(5) was a mere codification of that defense.[3] Our legislature is quite capable of calling out "defense[s] of the common law," such as contributory negligence, assumption of risk, the fellow servant rule, comparative fault, laches, estoppel, and contributory fault.  *See, e.g.*, Iowa Code §§ 87.21(2), 321.445(4)(b), 596.11, 619.17.  "If the legislature intended" to merely codify a common-law "bare metal" defense, the legislature "could easily have so stated." *See Hansen*, 149 N.W.2d at 172.

### 3. Absurdity theory

Beverage also argues that section 686B.7(5) should "only appl[y] to product manufacturers" because, under the district court's interpretation, section 686B.7(5) would eliminate the liability of "premises owners and asbestos product suppliers." In Beverage's view, this interpretation "is absurd in the extreme" and, therefore, cannot be correct.

As a preliminary matter, we think Beverage overstates the impact of section 686B.7(5).  It only immunizes defendants against liability for exposure to asbestos or silica products that were "made or sold by a third party."  It contains no general grant of immunity for "premises owners" or "asbestos product suppliers."

---

[3] While this defense is heavily litigated elsewhere, it does not appear Iowa courts have considered it.

That aside, we have considered whether the "absurdity doctrine" could apply to section 686B.7(5). Our supreme court has held that "even in the absence of statutory ambiguity, departure from literal construction [of a statute] is justified when such construction . . . would produce an absurd and unjust result and the literal construction is clearly inconsistent with the purposes and policies of the act." *State v. Walden*, 870 N.W.2d 842, 848 (Iowa 2015) (alteration in original) (citation omitted). Our supreme court has also cautioned, though, that the "doctrine should be used sparingly because it entails the risk that the judiciary will displace legislative policy on the basis of speculation that the legislature could not have meant what it unmistakably said." *Id.* (citation omitted).

We do not believe the doctrine applies here. We see no inconsistency between a "literal construction" of section 686B.7(5) and the "purposes and policies of" section 686B.7(5). *See id.* Its plain purpose—as shown by its plain words—is to narrow asbestos litigation by protecting defendants against liability for exposure to products that were "made or sold by a third party." As Alcoa and IITI point out, this will naturally tend to refocus asbestos litigation on more culpable targets, such as asbestos manufacturers. We see nothing absurd about this. And we see no grounds to "displace" the "legislative policy" that our elected leaders adopted through the enactment of section 686B.7(5). *See id.*; *see also Hansen*, 149 N.W.2d at 172 ("It is not the function of courts to legislate and they are constitutionally prohibited from doing so." (citing Iowa Const. art. III, § 1)).

### 4. Conclusion

Beverage has not shown the district court erred by concluding section 686B.7(5) granted immunity to Alcoa and IITI.

**B. Due Process**

We turn next to Beverage's due process argument. We review constitutional issues de novo. *Thornton v. Am. Interstate Ins. Co.*, 940 N.W.2d 1, 8 (Iowa 2020). But here our analysis begins and ends with error preservation.

"This court is a statutory court authorized to correct legal error." *State v. Shadlow*, No. 17-2100, 2018 WL 4913805, at *1 (Iowa Ct. App. Oct. 10, 2018) (citing Iowa Code § 602.5103 (2018), which "provid[es] the court of appeals 'constitutes a court for correction of errors at law'"). "If a litigant fails to present an issue to the district court and obtain a ruling on the same, it cannot be said that we are correcting an error at law." *State v. Tidwell*, No. 13-0180, 2013 WL 6405367, at *2 (Iowa Ct. App. Dec. 5, 2013). In those cases, we rightly conclude error has not been preserved and, therefore, "we have nothing to review." *See, e.g.*, *State v. Dawson*, No. 18-0862, 2019 WL 5792566, at *4 (Iowa Ct. App. Nov. 6, 2019). Indeed, "[i]t is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). This applies equally to constitutional claims. *See, e.g.*, *Christensen v. Iowa Dep't of Revenue*, 944 N.W.2d 895, 899 n.2 (Iowa 2020) ("Where the lack of a ruling on the constitutional challenge was not brought to the district court's attention, it was not preserved for appeal, and we do not further address it.").

Beverage concedes "the due process clause was not invoked below." Nor did the district court rule on any due process claim. So error was not preserved as to any due process claim. *State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008) (declining to consider unpreserved due process claim).

In their reply brief, though, Beverage invites us consider their unpreserved due process arguments. According to their reply brief, "[t]he Beverage family acknowledges that they did not make a due process argument in the district court. This [c]ourt may consider this argument, however, 'as incident to a determination of other issues properly presented.'" *See Presbytery of Se. Iowa v. Harris*, 226 N.W.2d 232, 234 (Iowa 1975).

For three reasons, we decline Beverage's invitation. First, Beverage waited until their reply brief to argue we could consider unpreserved arguments. But we generally do not consider issues raised for the first time in a reply brief. *Villa Magana v. State*, 908 N.W.2d 255, 260 (Iowa 2018). While there are exceptions, Beverage has not pointed to one. *See id.* ("Yet we have noted exceptions."). Indeed, our rules expressly required Beverage to deal with error preservation issues in their appellate brief. *See* Iowa R. App. P. 6.903(2)(g)(1). So we believe Beverage should have delivered their invitation then. That way, Alcoa and IITI would have had a chance to respond in their briefs.

Second, Beverage has only provided us a passing reference to *Harris*. Beverage has not developed an argument as to why and how we should consider their unpreserved argument "as incident to" another issue. And "[t]he failure to make more than a perfunctory argument constitutes waiver." *State v. Gibbs*, 941 N.W.2d 888, 902 (Iowa 2020) (McDonald, J., specially concurring).

Finally, as noted, the general rule is clear—we do not consider unpreserved constitutional claims. *See Christensen*, 944 N.W.2d at 899 n.2. We see no good reason to take a different path here.

**IV. Conclusion**

Because Beverage has not shown reversible error, we affirm.

**AFFIRMED.**