# In the Iowa Supreme Court

No. 25–0287

Submitted January 21, 2026—Filed March 6, 2026

**Linda Jones,**

Appellant,

vs.

**Larry Lindell, Broadlawns Medical Center Foundation** d/b/a **Broadlawns Medical Center,** and **Does I-V** and **Roes Corporations VI-X,** inclusive,

Appellees.

Appeal from the Iowa District Court for Polk County, Michael D. Huppert, judge.

The plaintiff appeals from a decision striking her expert as unqualified under Iowa Code section 147.139 and granting the defendants' motion for summary judgment. **Affirmed.**

McDonald, J., delivered the opinion of the court, in which all justices joined.

Devin K. Ross (argued) and James R. Jackson of Lowe Law Group, Ogden, Utah, for appellant.

Joseph F. Moser (argued) and Connie L. Diekema of Finley Law Firm, P.C., Des Moines, for appellees.

**McDonald, Justice.**

"If the standard of care given by a health care provider" is at issue in a case, the plaintiff's designated expert witness cannot qualify as an expert witness to testify "on the issue of the appropriate standard of care or breach of the standard of care" unless, among other things, the plaintiff's expert is "licensed to practice in the same or a substantially similar field as the defendant." Iowa Code § 147.139(1) (2023). In addition, "[i]f the defendant is board-certified in a specialty," the plaintiff's designated expert witness must be "certified in the same or a substantially similar specialty." *Id.* § 147.139(3). The question presented in this medical malpractice case is whether the plaintiff's designated expert witness, a board-certified urologist, meets these requirements to qualify as an expert witness in a suit brought against a board-certified ob-gyn.

I.

Linda Jones filed this medical malpractice action against Broadlawns Medical Center and Dr. Larry Lindell. Jones alleged that she underwent a total hysterectomy and bilateral salpingo-oophorectomy at Broadlawns. The procedure involved the removal of her uterus, cervix, ovaries, and fallopian tubes. Dr. Lindell performed the surgery. Dr. Lindell holds a license to practice medicine in the State of Iowa, and he holds a board certification in Obstetrics and Gynecology from the American Board of Obstetrics and Gynecology. Immediately following the surgery, Jones experienced pain, fever, dysuria, and other symptoms. Despite these symptoms, she was discharged from the hospital. Her symptoms persisted after being discharged, and she called 911 later that same day. Emergency personnel transported Jones to a different medical center, where surgeons identified and repaired injuries to her right ureter. In her

petition, Jones alleged the defendants were negligent in their surgical and postoperative care.

Jones designated Dr. Robert Wayment as her expert witness to testify regarding the standard of care and breach of the standard of care. Dr. Wayment holds licenses to practice medicine in Utah, North Dakota, and Wyoming, and he holds a board certification in Urology from the American Board of Urology. In his expert report, Dr. Wayment identified the standard of care and opined that Dr. Lindell breached the standard of care during and after Jones's surgery by damaging the right ureter with a cautery device, failing to perform a cystoscopy to detect a ureteral injury, discharging Jones instead of ordering appropriate diagnostic assessments when she reported experiencing certain symptoms after the procedure, and failing to consult a urologist postoperatively when complications involving the ureter became apparent.

The defendants deposed Dr. Wayment. He testified that he maintains an active urological practice that primarily consists of treating prostate and kidney cancers; treating kidney stones, percutaneous stones, and urinary tract infections; performing robotic renal and ureteral surgeries; and performing prostate procedures and vasectomies. Dr. Wayment coauthored a single article involving a hysterectomy during his residency in 2009, but he testified that his focus during that research was the "urologic aspect" of the article, while a coauthor, a gynecologist, "covered the hysterectomy part." Dr. Wayment further testified that he has never performed an exploratory laparotomy with total abdominal hysterectomy and bilateral salpingectomy and has never been trained in that procedure:

Q It is outside the scope of your practice and training to testify as to the standard of care as an OB/GYN; correct?

. . . .

A I have reviewed the literature. I work closely with gynecologists that do many hysterectomies, and I repair the problems that come from them. So in discussing this with other gynecologists, I believe this is the standard of care.

Q Well, I'm not here taking the deposition of any gynecologist you've discussed this with.

You would agree that you do not perform hysterectomies, and therefore, you do not know the standard of care for performing a hysterectomy?

. . . .

A Okay. I do not perform hysterectomies. You're right.

Q And answer the second part of that question. So you do not know the standard of care for performing a hysterectomy?

. . . .

A Yeah, you can say -- I guess you can say yes.

He testified that he would ordinarily not be in the operating room while an ob-gyn was performing a hysterectomy. Apart from occasionally making the initial incision at an ob-gyn's request, he has not removed any of the female reproductive organs, does not conduct preoperative risk counseling for hysterectomy procedures, and does not typically recommend hysterectomies to patients.

After deposing Dr. Wayment, the defendants filed a combined motion to strike and exclude Dr. Wayment as unqualified and a motion for summary judgment. They argued that Dr. Wayment could not be qualified as an expert witness in this case pursuant to Iowa Code section 147.139 because he was not licensed to and did not maintain a practice in the same or a substantially similar

field as Dr. Lindell and because he was not certified in the same or substantially similar specialty as Dr. Lindell. Because Dr. Wayment could not be qualified as an expert witness in this case, Jones had no expert witness to opine on the standard of care and breach of the standard of care necessary to establish a prima facie case of negligence. Accordingly, the defendants argued, they were entitled to judgment as a matter of law.

The district court granted the motion. The district court relied on dictionary definitions of "substantially" and "similar" and concluded that "an appropriate definition of the phrase 'substantially similar' would be that the field of the designated expert and the physician who is the subject of the negligence claim 'must have considerable characteristics in common with and be, to a large degree, very much alike in substance and essentials.'" (Quoting *Ray v. State*, 564 S.W.3d 771, 777 (Mo. Ct. App. 2018).) Applying that definition, the court found that the plaintiff could not meet her burden to establish that urology is the same or substantially similar specialty as obstetrics and gynecology. Because Jones failed to establish that the specialties themselves are substantially similar, the court struck Dr. Wayment's report and dismissed the case.

## II.

The dispute in this case involves whether the district court erred in concluding that the plaintiff's designated expert witness was not qualified to opine on the standard of care and breach of the standard of care. We review issues of statutory interpretation for correction of errors at law. *Cnty. Bank v. Shalla*, 20 N.W.3d 812, 818 (Iowa 2025).

A.

Iowa law imposes a heightened standard to qualify an expert witness in cases where the standard of care given by a health care provider is at issue. The relevant statute provides:

> If the standard of care given by a health care provider, as defined in section 147.136A, is at issue, the court shall only allow a person the plaintiff designates as an expert witness to qualify as an expert witness and to testify on the issue of the appropriate standard of care or breach of the standard of care <u>if all of the following are established by the evidence</u>:
>
> 1. The person is <u>licensed to practice in the same or a substantially similar field</u> as the defendant, is in good standing in each state of licensure, and in the five years preceding the act or omission alleged to be negligent, has not had a license in any state revoked or suspended.
>
> 2. In the five years preceding the act or omission alleged to be negligent, the person <u>actively practiced in the same or a substantially similar field</u> as the defendant or was a qualified instructor at an accredited university in the same field as the defendant.
>
> 3. If the defendant is board-certified in a specialty, <u>the person is certified in the same or a substantially similar specialty</u> by a board recognized by the American board of medical specialties, the American osteopathic association, or the council on podiatric medical education.

Iowa Code § 147.139(1)–(3) (emphasis added). The parties dispute whether Drs. Wayment and Lindell are licensed to practice and do practice in the same or substantially similar field and whether Drs. Wayment and Lindell are board-certified in the same or substantially similar specialty.

B.

The parties first dispute whether Dr. Wayment was licensed to practice and had actively practiced in the same or substantially similar field as Dr. Lindell within the meaning of subsections (1) and (2) of the statute. *See id.* § 147.139(1)–

(2). In resolving that dispute, it is important to understand the scope of the entire statutory scheme. The expert witness qualification statute does not just apply to suits against physicians; it applies whenever the "standard of care given by a health care provider, as defined in section 147.136A, is at issue." *Id.* § 147.139. A "health care provider" refers to a wide variety of health care professionals each subject to their own licensure scheme, including:

> a physician or an osteopathic physician licensed under chapter 148, a physician assistant licensed and practicing under a supervising physician under chapter 148C, a podiatrist licensed under chapter 149, a chiropractor licensed under chapter 151, a licensed practical nurse, a registered nurse, or an advanced registered nurse practitioner licensed under chapter 152 or 152E, a dentist licensed under chapter 153, an optometrist licensed under chapter 154, a pharmacist licensed under chapter 155A, a professional corporation under chapter 496C that is owned by persons licensed to practice a profession listed in this paragraph, or any other person or entity who is licensed, certified, or otherwise authorized or permitted by the law of this state to administer health care in the ordinary course of business or in the practice of a profession.

*Id.* § 147.136A(1)(*a*).

Because the statute applies to different categories of health care providers, the most logical interpretation of the qualification provision in section 147.139 is that the term "field" categorically distinguishes one type of health care provider "licensed, certified, or otherwise authorized" to administer health care in this state from another. *Id.*; *see also Field*, *Webster's Third New International Dictionary* 845 (unabr. ed. 2002) [hereinafter *Webster's*] (defining "field" as a "category, or division wherein a particular activity or pursuit is carried out"). A designated expert and a health care provider defendant are thus licensed in and practice in the same field if they hold the same license and practice under the same license.

The defendants contend that this is too low of a bar and that the statute must demand something more than holding the same license and practicing under the same license. The defendants argue that field must refer to some subset of practice within the license, for example, the health care provider's specific area of practice. Dr. Wayment practices in the area of urology, but Dr. Lindell practices in the area of obstetrics and gynecology. Therefore, the defendants argue, Dr. Wayment and Dr. Lindell are not in the same field.

The defendants' argument is not consistent with the text of the statute. The statute first requires that the qualifying expert be "*licensed* to practice in the same or a substantially similar field" as the defendant health care provider. Iowa Code § 147.139(1) (emphasis added). The defendants concede that Dr. Lindell does not hold a license in obstetrics and gynecology, however, because there is no separate license for obstetrics and gynecology. We thus cannot interpret field to mean the defendant health care provider's limited area of practice within a license without reading the word license out of the statute, and this we decline to do. *See State v. Boone*, 989 N.W.2d 645, 650 (Iowa 2023) ("We presume statutes or rules do not contain superfluous words." (quoting *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 474 (Iowa 2017))).

With that understanding, it is clear that subsections (1) and (2) of the statute are satisfied here. Dr. Lindell and Dr. Wayment are both licensed physicians, and they both practice medicine. They are thus licensed to practice and do in fact practice in the same field within the meaning of the statute. Because Drs. Lindell and Wayment are both licensed to practice and do in fact practice in the same field, we need not consider the issue of what constitutes a substantially similar field within the meaning of the statute.

9

C.

The parties next dispute whether Dr. Wayment was board-certified in the same or a substantially similar specialty as Dr. Lindell within the meaning of subsection (3) of the statute. *See* Iowa Code § 147.139(3). Dr. Wayment is board-certified in Urology by the American Board of Urology. Dr. Lindell is board-certified in Obstetrics and Gynecology by the American Board of Obstetrics and Gynecology. The parties agree that these are not the same specialties, but they dispute whether these specialties are substantially similar.

The statutory history and the text of the statute make clear that courts are to take a categorical approach in determining whether one specialty is substantially similar to another. In the prior version of this statute, a person could be qualified as an expert witness "if the person's medical or dental qualifications relate directly to the medical problem or problems at issue and the type of treatment administered in the case." Iowa Code § 147.139 (2016). This required courts to make a case-by-case determination focused on the proposed expert's qualifications as they related to the specific problems and treatments at issue in the case. The legislature replaced that case-by-case-problem approach in 2017 when it adopted the current version of the statute. 2017 Iowa Acts ch. 107, § 3 (codified at Iowa Code § 147.139 (2018)). The statute now requires courts to make a categorical determination of whether the proposed expert and the defendant health care provider are board-certified in the same or substantially similar specialty without any consideration of the actual problems or treatments at issue in the case.

Generally speaking, "substantially similar" means that one thing has a high degree of likeness to another but may be less than identical. *See, e.g., Ray*, 564 S.W.3d at 777 (stating that to be substantially similar, elements "must have

considerable characteristics in common with and be, to a large degree, very much alike in substance and essentials"); *Fisk v. State*, 574 S.W.3d 917, 920 (Tex. Crim. App. 2019) (stating that substantially similar elements "must display a high degree of likeness, but may be less than identical" (quoting *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Crim. App. 2011), *overruled in part on other grounds by, Fisk*, 574 S.W.3d 917)); *Johnson v. Commonwealth*, 674 S.E.2d 541, 543 (Va. Ct. App. 2009) ("[T]wo things are 'substantially similar' if they have common core characteristics or are largely alike in substance or essentials."). A specialty is "something in which one specializes or of which one has special knowledge." *Specialty*, *Webster's* 2186–87. As used here, then, substantially similar board-certified medical specialties are those specialties that have a high degree of likeness but are not identical.

We conclude that two board-certified medical specialties are substantially similar when they share a high degree of likeness in their core characteristics such that a practitioner certified in one specialty would, by virtue of that certification alone, possess the foundational knowledge and competence to evaluate and opine on the standard of care applicable to the other specialty. The inquiry is categorical, not case specific. Courts must assess whether the specialties themselves are substantially similar without regard to whether the particular expert has individual training or experience relevant to the specific medical problems or treatments at issue in the case. It requires more than incidental overlap or occasional clinical collaboration. Relevant factors might include, but are not limited to, the following: the formal definitions of the specialties, the certifying board structures, similarities in education and training, similarities in the scope of practice, overlap in core and procedural

competencies, professional association overlap, and hospital credentialing patterns.

It is the plaintiff's burden to establish the designated expert witness meets this standard and is thereby statutorily qualified to testify against a health care provider. *See Ranes v. Adams Lab'ys, Inc.*, 778 N.W.2d 677, 686 (Iowa 2010) ("In all circumstances involving expert testimony, the proponent of the evidence has the burden of demonstrating to the court as a preliminary question of law the witness's qualifications and the reliability of the witness's opinion."). Where the issue is contested, "the court shall only allow a person . . . to qualify as an expert witness and to testify on the issue of the appropriate standard of care or breach of the standard of care if" the standard is "established by the evidence." Iowa Code § 147.139 (2023).

We cannot conclude the district court erred in concluding that Jones failed to meet her burden in this case. The formal definitions of urology, obstetrics, and gynecology do not support the conclusion that these specialties are substantially similar. A medical dictionary defines "urology" as "the medical specialty concerned with the study, diagnosis, and treatment of diseases of the genitourinary tract." *Urology, Stedman's Medical Dictionary for the Health Professions and Nursing* 1755 (7th ed. 2012). "Obstetrics" is "[t]he specialty of medicine concerned with the care of women during pregnancy, parturition, and the puerperium." *Obstetrics, id.* at 1180. The same medical dictionary defines "gynecology" as "[t]he medical specialty concerned with diseases of the female genital tract, as well as endocrinology and reproductive physiology of the female." *Gynecology, id.* at 730. A leading treatise indicates that urology is the "treatment of diseases and disorders of the urinary systems of both men and women, and the reproductive system and organs of the male." 103 Am. Jur. Trials 237, § 1,

at 259 (2007); *see also* 4 Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, *The American Law of Torts* § 15:34, at 729 (2009) ("Urology is the scientific study of the urine and is that branch of medical science embracing the study and treatment of the diseases and the abnormalities of the urogenital tract in the human male and the urinary tract in the female. A urologist is one skilled in urology—a specialist in the diagnosis and treatment of the disorders of the urogenital tract in the male and of the urinary tract in the female."). We can infer from the fact that urology is a specialization in the study of the male reproductive system that it does not include, generally, specialization in the female reproductive system, which appears to be a primary area of focus of obstetrics and gynecology.

The certifying board structure also supports the conclusion that these are not substantially similar specialties. The record establishes that urology and obstetrics and gynecology are certified by separate member boards of the American Board of Medical Specialties. Urologists are certified by the American Board of Urology. Obstetricians and gynecologists are certified by the American Board of Obstetrics and Gynecology. The existence of separate certifying boards indicates that the medical profession has determined that the two specialties require distinct training, examination, and credentialing processes. Compare that to the American Board of Radiology, which offers certificates in Diagnostic Radiology, Interventional Radiology and Diagnostic Radiology, Medical Physics, and Radiation Oncology, or the American Board of Surgery, which offers certificates in General Surgery and Vascular Surgery. The fact that a designated expert witness and defendant health care provider hold certifications from the same boards may evidence substantial similarity between the specialties. As noted, however, the specialties in this case are certified by different boards.

The fact that the American Board of Obstetrics and Gynecology and the American Board of Urology each recognize urogynecology as a subspecialty does not change our analysis. The subspecialty covers only the discrete area of female pelvic medicine and reconstructive surgery. The existence of a subspecialty for a discrete area of shared interest does not necessarily establish that the primary specialties are substantially similar in their entirety. Indeed, the very existence of a distinct subspecialty undercuts rather than supports Jones's argument: the creation of a separate certification suggests that the core specialties are sufficiently different that a bridge between them was required. Moreover, even if Jones was correct that a board-certified urogynecologist would be substantially similar to an ob-gyn, that is not this case. Dr. Wayment is board-certified only in urology and not the subspecialty of urogynecology.

Jones argues that the two specialties overlap in education, training, experience, and scope of practice, but these arguments are more assertions rather than facts proved by competent evidence. For example, there is no evidence of specific curricular overlap. There is no evidence of specific similarities in training. There is no evidence of the core competencies of board-certified specialists in these specialties. There is no evidence of the core procedural competencies of these specialties. There is no evidence of professional association overlap. There is no evidence of hospital credentialing permissions and patterns related to these specialties. To the extent there is any specific evidence related to these issues, it relates to Dr. Wayment personally. And that evidence, to the extent it is representative of board-certified urologists, generally, shows dissimilarity. The record shows that Dr. Wayment has never been trained to perform surgeries on the female reproductive organs. Dr. Wayment explicitly

testified that he would not be familiar with the standard of care imposed on an ob-gyn.

Finally, Jones argues that "all of Dr. Wayment's opinions relate to Dr. Lindell's *post-operative* conduct." The premise is incorrect, as Dr. Wayment's written opinion clearly identifies an alleged breach of the standard of care when Dr. Lindell "caused right ureter damage with the cauterizing tool *during surgery*." (Emphasis added.) Regardless, this argument is irrelevant to our analysis because it attempts to tie Dr. Wayment's qualifications to the malpractice alleged in this case. Under the statute's categorical approach, the fact that Dr. Wayment has treated and continues to treat postoperative "ureteral injuries like the one Ms. Jones experienced in this case" cannot establish that urology and obstetrics and gynecology are substantially similar.

We find no error in the district court's conclusion that the plaintiff failed to prove Dr. Wayment was qualified under the statute to provide expert testimony in this case. Here, the plaintiff failed to produce sufficient evidence to establish that board certification in urology is substantially similar to board certification in obstetrics and gynecology.

III.

Because Jones failed to establish the requisite similarity between the specialties, the district court did not err in striking Dr. Wayment as an expert. Without a qualified expert remaining to testify on her behalf, Jones's medical malpractice claim cannot proceed. Accordingly, the district court properly granted the defendants' motion for summary judgment.

**Affirmed.**