Mary BAZEL, Plaintiff–Appellant,

v.

Thomas M. MABEE, James Phares, and St. Luke's Hospital, n/k/a/ Genesis Medical Center, Defendants–Appellees.

No. 97–0202.

Court of Appeals of Iowa.

Jan. 28, 1998.

James L. Pillers of Pillers, Pillers, & Zimmerman, P.C., Clinton, for appellant.

Ralph D. Sauer and Jean Dickson Feeney of Betty, Neuman & McMahon, Davenport, for appellee-Mabee.

James R. Snyder and Webb L. Wassmer of Simmons, Perrine, Albright & Ellwood, P.L.C., Cedar Rapids, for appellee-Phares.

Carole J. Anderson, Robert V.P. Waterman, Jr., and Rachel R. Watkins Schoenig of Lane & Waterman, Davenport, for appellee-Genesis Medical Center.

Heard by CADY, C.J., and SACKETT and STREIT, JJ.

SACKETT, Judge.

Plaintiff-appellant Mary Bazel filed a medical malpractice claim against defendants-appellees Thomas M. Mabee, James Phares, and St. Luke's Hospital alleging use of Betadine, to which plaintiff claims an allergy, following surgery prolonged care of the wound causing debridement and necessitating skin grafts. The district court dismissed plaintiff's claim on defendants' motion for summary judgment, finding plaintiff failed to show by expert testimony the causal connection between the breach of duties and plaintiff's injuries. The district court further found moot defendant's claim plaintiff violated Iowa Code section 668.11 in not disclosing the qualifications of experts or the reasons for calling them. We reverse and remand.

Plaintiff had an artery bypass graft at defendant St. Luke's Hospital[1] in September 1993. Defendant Mabee was her surgeon and defendant Phares was a physician's as-

1. St. Luke's Hospital, as the result of a merger, is now called Genesis Medical Center.

sistant caring for plaintiff. There is evidence plaintiff told one or more persons at the time of admittance she was allergic to Betadine.[2] There is evidence Betadine was used during and following plaintiff's surgery.

Plaintiff contends the trial court erred in dismissing this claim on summary judgment. The question is whether expert testimony was necessary to establish a prima facie claim of medical malpractice. A second issue raised by defendants but not addressed by the trial court is whether plaintiff made a proper designation of experts as mandated by Iowa Code section 668.11.

Our standards for reviewing a grant of a motion for summary judgment are well established:

> We will uphold a grant of summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. An issue of fact is "material" only when the dispute is over facts that might affect the outcome of the litigation, given the applicable governing law.

> When we review the propriety of a grant of summary judgment, the moving party is required to show that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law. In determining whether the movant has met this burden, we review the record in a light most favorable to the party opposing summary judgment, in this case the plaintiff.

> In this sense, we review the record as we would on a motion for directed verdict, with the nonmoving party entitled to every legitimate inference that reasonably can be deduced from the evidence and summary judgment is inappropriate if reasonable minds can differ on how the issue should be resolved.

*Smith v. CRST Int'l, Inc.*, 553 N.W.2d 890, 893 (Iowa 1996) (citing *Dickerson v. Mertz*, 547 N.W.2d 208, 212 (Iowa 1996) (citations omitted)).

To establish a prima facie case of medical malpractice, a plaintiff must produce evidence: (1) establishing the applicable standard of care, (2) demonstrating a violation of this standard, and (3) developing a causal relationship between the violation and the injury sustained. *Oswald v. LeGrand*, 453 N.W.2d 634, 635 (Iowa 1990).

Most medical malpractice lawsuits are so highly technical they may not be submitted to a fact finder without medical expert testimony supporting the claim. *Thomas v. Fellows*, 456 N.W.2d 170, 173 (Iowa 1990). Generally, when the ordinary care of a physician is an issue in a medical malpractice action, only experts in the profession can testify and establish the standard of care and skill required. *Bray v. Hill*, 517 N.W.2d 223, 226 (Iowa App. 1994) (Donielson, C.J., and Sackett, J., dissenting). There are two exceptions to this rule: (1) where the physician's lack of care is so obvious as to be within the comprehension of a layperson and requires only common knowledge and experience to understand, and (2) when the physician injures a part of the body not being treated. *Oswald*, 453 N.W.2d at 635–36.

Having been advised of and charting plaintiff's allergy, defendants should not have used Betadine absent some compelling reason to do so. Defendants have not shown a compelling reason for using it. Expert evidence to establish a factual question as to defendants' negligence was not necessary. The evidence Betadine was used despite plaintiff's reporting an allergy to it showed a lack of care sufficient to generate a jury question on negligence without expert testimony.[3]

The next question is whether plaintiff was required to introduce expert testimony to support proximate cause or whether it, too, comes under the common knowledge exception. Though fault is established, it does not necessarily prove proximate cause. *See Oak Leaf Country Club, Inc. v. Wilson*, 257

---

**2.** Answers to interrogatories indicate plaintiff had a reaction in August 1993 and learned Betadine was used. Plaintiff further answered she was told on August 20, 1993, of her allergy to Betadine by a dermatologist.

**3.** Having determined there is evidence of negligence, we find it unnecessary to address plaintiff's contention res ipsa loquitur applied.

N.W.2d 739, 746 (Iowa 1977). Whether the result of applying Betadine to plaintiff's skin caused the damage she claims to have suffered is not within the common knowledge of a non-medically trained person. Consequently, to generate a factual issue on the question of proximate cause, plaintiff must present expert testimony sufficient to prove the injury was caused by defendants' negligence.

The deadline for disclosing experts was May 10, 1996. Plaintiff filed a designation of expert witness on April 30, 1996. That designation stated:

> Plaintiff, Mary Bazel, ... hereby designates her medical expert witness as John J. Murray, M.D., Ph.D., Department of Allergy–Immunology, Vanderbilt University Medical Center, 843 Light Hall, Nashville, TN 37232–0111.

On December 23, 1996, defendant medical center filed its certification, stating:

> Genesis Medical Center ... certifies to the court that it may call the following expert witnesses:
>
> 1. John Corson, M.D., Director of Vascular Department, University of Iowa Hospitals and Clinics, Iowa City, IA 52242.
>
> Dr. Corson is a medical doctor specializing in vascular surgery. Dr. Corson will testify as to appropriate standards of care, will testify concerning his opinions on the care and treatment given to Mary Bazel by Defendants, will testify as to the cause of Mary Bazel's medical conditions, and will respond to opinions given by experts identified by the Plaintiffs. See C.V. attached to Affidavit of John Corson, previously filed in this case.
>
> In addition, Defendant may ask opinion questions of Plaintiffs' treating health care providers, the other Defendants, and experts listed by other parties.

On November 25, 1996, plaintiff supplemented her answer to the following interrogatory:

> State the name and address of each person whom you intend to call as an expert witness at trial and, as to each such expert, please state:
>
> (a) The subject matter or area on which such expert is to testify.
>
> Opinion re wound healing and Betadine allergy.
>
> (b) Said expert's qualifications to testify as an expert on said subject.
>
> See curriculum vitae.[4]
>
> (c) The mental impressions and opinions held by said expert and the facts known to the expert (regardless of when the factual information was acquired) which relate to, or form the basis of, the mental impressions and opinions held by the expert.
>
> See below.
>
> (d) A summary of the grounds for each opinion of such expert.
>
> See below.
>
> (e) A complete bibliography of books, treatises, articles and other works which such expert regards as authorization on the subject on which the expert will testify.
>
> (f) The manner in which such expert became familiar with the facts of this case.
>
> Medical and hospital records, conversation with Ms. Bazel's attorney.
>
> (g) The educational background of the expert.
>
> See curriculum vitae.
>
> (h) The expert's familiarity with similar medical occurrences.
>
> . . . .
>
> ANSWER: An individual who suffers from a Betadine allergy will have inhibited wound healing when Betadine is applied to the area of the wound. The Betadine allergy would compound wound healing. I have been informed Mary Bazel has an allergy to Betadine and that Betadine was

---

4. The curriculum vitae is an extensive summary of Dr. Murray's qualifications showing he possesses the expertise to supply an opinion on this issue and includes reference to his certification by the American Board of Allergy and Immunology.

applied during and/or after her surgery on September 22, 1993 to her leg wound at the vein harvest site. If these facts are true, it is more likely than not that the application of Betadine to the wound contributed to the wound breaking down and splitting open. I have reviewed Mary Bazel's medical records for her hospital stay in September/October 1993.

It is noted that the medical charts in this case reflect that Betadine was used during surgery and for wound care after surgery. I am informed that one of the nurses told Mary Bazel that Betadine was used in the treatment of the incision wound.

[Signed by John J. Murray, M.D., Ph.D.]

Defendants contend plaintiff did not by May 10, 1996, supply them with the expert's education, qualifications, mental opinions, or purpose in calling. Thus, it is defendants' position plaintiff cannot use this expert testimony in resisting the motion for summary judgment.

■ The trial court considered the designation of John J. Murray, M.D., Ph.D., and the interrogatory answers in ruling on the motion rejecting plaintiff's claim on the basis that Dr. Murray's opinion failed to set a standard of care and link the use of Betadine to plaintiff's injuries. The trial court did not rule on whether plaintiff's designation is in violation of Iowa Code section 668.11, finding it moot.

■ Dr. Murray states a Betadine allergy will inhibit wound healing and compound wound healing if Betadine is applied to the area of the wound. He further stated if Betadine was applied, it is more likely than not it contributed to the wound breaking down and splitting open. Conduct is a proximate cause of damage when it is a substantial factor in producing damage and the damage would not have happened except for the conduct. *See Grinnell Mut. Reinsurance Co. v. Employers Mut. Casualty Co.*, 494 N.W.2d 690, 693 (Iowa 1993). Dr. Murray's statement, if taken in the light most favorable to plaintiff, is such evidence that could cause a reasonable person to regard the application of Betadine as a proximate cause of plaintiff's condition. We reverse on this issue.

■ We remand to the trial court to consider defendants' claim there was an Iowa Code section 668.11 violation. Section 668.11 does allow a court discretion to grant extensions of time to designate experts. *See Hantsbarger v. Coffin*, 501 N.W.2d 501, 505 (Iowa 1993); *Thomas*, 456 N.W.2d at 171; *Donovan v. State*, 445 N.W.2d 763, 765 (Iowa 1989). We do not retain jurisdiction.

**REVERSED AND REMANDED.**