# IN THE SUPREME COURT OF IOWA

No. 22–0576

Submitted November 15, 2023—Filed February 9, 2024

**CHARLENE JORGENSEN** and **MICHAEL JORGENSEN,**

Appellees,

vs.

**ADAM B. SMITH, M.D.; ADAM SMITH, M.D., P.C.;** and **TRI-STATE SPECIALISTS, L.L.P.,**

Appellants.

Appeal from the Iowa District Court for Woodbury County, Jeffrey L. Poulson, Judge.

A clinic sought interlocutory review of a district court order denying the clinic's motion for summary judgment as to a claim of negligent retention. **AFFIRMED AND REMANDED.**

May, J., delivered the opinion of the court, in which all justices joined.

Jeff W. Wright (argued) and Zack A. Martin of Heidman Law Firm, P.L.L.C., Sioux City, for appellants.

Michael D. Bornitz (argued) of Cutler Law Firm, LLP, Sioux Falls, South Dakota, and William D. Sims of Northern Plains Justice, LLP, Sioux Falls, South Dakota, for appellees.

**MAY, Justice.**

An injured patient claims that a clinic was negligent in retaining a surgeon who was unfit to practice surgery. The main question before us is whether Iowa Code section 147.140 (2018) required the patient to produce a "certificate of merit affidavit" containing an expert's opinion that the clinic had breached the applicable standard of care by retaining the surgeon. Based on the particular record and arguments before us, we answer that question in the negative.

### I. Background.

**A. The Parties and Their Relationships.** The plaintiffs, Charlene and Michael Jorgensen, are married. Charlene underwent surgeries in 2016 and 2018. Both surgeries were performed by defendant Adam Smith, M.D. (Dr. Smith). At that time, Dr. Smith was a licensed physician who held himself out as a specialist in plastic surgical care. Dr. Smith was the only employee of defendant Adam Smith, M.D., P.C. (Smith P.C.). Smith P.C. employed Dr. Smith to provide medical services on behalf of defendant Tri-State Specialists, L.L.P. (Tri-State). Tri-State operates as a clinic for surgeons and other specialists.

**B. The Jorgensens' Petition.** In May 2020, the Jorgensens brought this suit against Dr. Smith, Smith P.C., and Tri-State. The Jorgensens allege that Dr. Smith botched the 2018 surgery and that all three defendants were liable for the resulting damages. But the Jorgensens do not allege the same kinds of claims against all three defendants. As to Dr. Smith, the Jorgensens allege medical negligence and lack of informed consent. As to Smith P.C., the Jorgensens allege medical negligence and respondeat superior. As to Tri-State, the Jorgensens allege respondeat superior and negligent "hiring, supervising, employing, and/or retaining." This last claim against Tri-State is at the center of this appeal. At oral argument, the Jorgensens' counsel clarified that this claim is about negligent retention.

**C. The Jorgensens' Negligent Retention Claim.** In brief summary, the negligent retention claim is based on the idea that Tri-State knew or should have known that Dr. Smith was unfit to practice surgical medicine and, therefore, Tri-State was negligent in retaining Dr. Smith. Put another way, the Jorgensens believe that Tri-State was negligent in *failing to discharge* Dr. Smith before he could harm Charlene in the 2018 surgery.

The Jorgensens give a host of reasons why Tri-State was obligated to discharge Dr. Smith. For one thing, the Jorgensens claim that Dr. Steele—a surgeon who previously worked for Tri-State—made verbal reports to Tri-State about Dr. Smith's improper surgical practices. Then, after Tri-State fired Dr. Steele, Dr. Steele sent a letter to Tri-State. The letter raised a wide range of concerns about Dr. Smith, including claims of "rampant malpractice and widespread insurance fraud." Dr. Steele's letter and his verbal reports were all provided to Tri-State well before the 2018 surgery.

**D. The Jorgensens' Certificate of Merit.** In June 2020, the defendants filed their answer to the Jorgensens' petition. The filing of the defendants' answer started a sixty-day clock under Iowa Code section 147.140(1)(*a*). We will discuss section 147.140 at some length below. In brief summary, though, in some actions against health care providers, section 147.140 requires the plaintiff to serve a "certificate of merit affidavit" within "sixty days of the defendant's answer." *Id.* The affidavit must be signed under oath by an expert witness. *Id.* And it must include a statement by the expert that the applicable standard of care was breached. *Id.*

In an effort to comply with this requirement, the Jorgensens timely served a certificate of merit affidavit. Their affidavit was signed under oath by Dr. Mark Jewell, a licensed plastic surgeon. In the affidavit, Dr. Jewell certified that he had reviewed medical records relating to the 2018 surgery and follow-up care.

He further certified "to a reasonable degree of [his] medical surgical experience and knowledge that [Dr. Smith] breached the standard of care with respect to" both the 2018 surgery and the follow-up care.

But Dr. Jewell's affidavit did not address whether Tri-State should have discharged Dr. Smith prior to the 2018 surgery. Nor did the Jorgensens file a separate affidavit by a different expert to address Tri-State's failure to discharge Dr. Smith.

**E. The Jorgensens' Expert Designation.** In September 2021, the Jorgensens designated a single expert witness, Dr. Michael Edwards, to testify at trial. Dr. Edwards is a board-certified plastic surgeon. In his report, Dr. Edwards opined "that Dr. Smith fell below the accepted standard of care in the treatment of [Charlene] in the evaluation, planning[,] and conduct of her" surgical care.

But Dr. Edwards's report did not offer any opinion as to whether Tri-State should have discharged Dr. Smith prior to the 2018 surgery. Nor did the Jorgensens designate any other expert to address Tri-State's failure to discharge Dr. Smith.

**F. The Defendants' Summary Judgment Motion.** A couple months later, the defendants moved for partial summary judgment. The defendants' motion sought dismissal of the Jorgensens' negligent retention claim. As support for their motion, the defendants raised two arguments. First, the defendants noted that the Jorgensens' certificate of merit affidavit had only addressed Dr. Smith's negligent surgical care. The Jorgensens had not filed a separate certificate of merit affidavit to address Tri-State's alleged negligence in retaining Dr. Smith. Therefore, in the defendants' view, section 147.140 required dismissal of the negligent retention claim.

Second, the defendants argued that the Jorgensens had also failed to comply with Iowa Code section 668.11. Section 668.11 generally requires plaintiffs "in a professional liability case brought against a licensed professional" to disclose their experts "within one hundred eighty days of the defendant's answer." *Id.* In the defendants' view, section 668.11 required the Jorgensens to designate an expert who would opine that Tri-State was negligent in retaining Dr. Smith. Because the Jorgensens did not do so, the defendants argued, the negligent retention claim should be dismissed.

**G. The District Court's Summary Judgment Ruling.** The district court denied the defendants' request for summary judgment. As support for its ruling, the court gave two reasons. First, the court found that although Tri-State "is a health facility and within the type of cases included in [section] 147.140," the negligent retention claim "is not a question of professional medical care, but is within the ambit of 'nonmedical, administrative, or ministerial acts.' " (Quoting *Hall v. Jennie Edmundson Mem'l Hosp.*, 812 N.W.2d 681, 684 (Iowa 2012).) Therefore, the court reasoned, "[n]o expert testimony is required to establish a prima facie case and no certificate of merit affidavit is required."

Second, the court noted that even in cases about medical care, expert testimony isn't always required to establish a prima facie case. "Where lack of care is so obvious as to be within the comprehension of a lay person and requires only common knowledge to understand, no expert testimony is required," the court noted. And under "the facts of this case," the court believed that "the alleged facts" supporting the negligent retention claim "are so obvious as to be within this exception."

**H. Reconsideration and Interlocutory Appeal.** The defendants asked the district court to reconsider its ruling. The court denied the defendants' request.

The defendants then asked our court to grant interlocutory appeal. We granted that request.

**II. Merits.**

In this interlocutory appeal, the defendants contend that summary judgment was required by Iowa Code section 147.140 or, in the alternative, section 668.11. We address each statute in turn.

**A. Our Review.** We review the district court's interpretation of statutes for correction of errors at law. *Struck v. Mercy Health Servs.-Iowa Corp.*, 973 N.W.2d 533, 538 (Iowa 2022). We are guided by familiar principles of statutory interpretation. We focus on the words of the legislature. *Copeland v. State*, 986 N.W.2d 859, 865 (Iowa 2023). Generally, we give those words "their common, ordinary meaning in the context within which they are used." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014). But when the legislature defines its words, we are bound by those definitions. *See State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 471 (Iowa 2017).

**B. Iowa Code Section 147.140.** We begin our statutory interpretation by examining the words of Iowa Code section 147.140(1)(*a*), which states in part:

> In any action for personal injury or wrongful death against a health care provider based upon the alleged negligence in the practice of that profession or occupation or in patient care, which includes a cause of action for which expert testimony is necessary to establish a prima facie case, the plaintiff shall . . . serve upon the defendant a certificate of merit affidavit signed by an expert witness with respect to the issue of standard of care and an alleged breach of the standard of care.

We believe these words require "the plaintiff" to "serve . . . a certificate of merit affidavit" if four criteria are met:

1. The plaintiff's action is "for personal injury or wrongful death."

2. The action is "against a health care provider."

3. The action is "based upon the alleged negligence in the practice of that profession or occupation or in patient care."

4. The action includes "a cause of action for which expert testimony is necessary to establish a prima facie case."

*Id.*; *accord Struck*, 973 N.W.2d at 540 (identifying four requirements).

We address these criteria in turn. However, because we conclude that the third criterion is dispositive, we do not reach the fourth criterion.

1. *Personal injury or death.* As explained, the first criterion is that the plaintiff's action must be "for personal injury or wrongful death." *Id.* Here it is undisputed that the Jorgensens are suing for personal injury. So the first criterion is satisfied.

2. *Health care provider.* The second criterion turns on whether Tri-State is a "health care provider." *Id.* Here we are guided by the legislature's own definitions of the term "health care provider." Specifically, section 147.140(7) states that "[f]or purposes of" section 147.140, " 'health care provider' means the same as defined in section 147.136A." *Id.* § 147.140(7) (emphasis omitted). And section 147.136A contains this definition of "[h]ealth care provider":

> "Health care provider" means a physician or an osteopathic physician licensed under chapter 148, a chiropractor licensed under chapter 151, a podiatrist licensed under chapter 149, a physician assistant licensed and practicing under a supervising physician under chapter 148C, a licensed practical nurse, a registered nurse, or an advanced registered nurse practitioner licensed under chapter 152 or 152E, a dentist licensed under chapter 153, an optometrist licensed under chapter 154, a pharmacist licensed under chapter 155A, a hospital as defined in section 135B.1, a health care facility as defined in section 135C.1, a health facility as defined in section 135P.1, a professional corporation under chapter 496C that is owned by persons licensed to practice a profession listed in this paragraph, or any other person or entity who is licensed, certified, or otherwise authorized or permitted by the law of this state to administer health care in the ordinary course of business or in the practice of a profession.

*Id.* § 147.136A(1)(*a*) (emphasis omitted).

Applying the statutory text to the undisputed facts, we conclude that Tri-State qualifies as a "health care provider." At least two reasons support this view. First, section 147.136A's definition of "[h]ealth care provider" includes "a health facility as defined in section 135P.1." *Id.* And section 135P.1's definition of "[h]ealth facility" includes a "clinic." *Id.* § 135P.1(3) (emphasis omitted). Because Tri-State operates as a clinic, we think Tri-State fits this definition. Second, and alternatively, section 135P.1's definition of "health care provider" also includes "any . . . limited liability partnership . . . comprised of" a clinic. *Id.* This also seems to describe Tri-State, which is a limited liability partnership that operates as a clinic. Either way, we believe Tri-State fits within the definition of "health care provider" for purposes of section 147.136A. Therefore, Tri-State is a "health care provider" for purposes of 147.140. *Id.* § 147.140(7).

We have considered the Jorgensens' counterarguments. The Jorgensens note that Tri-State has sometimes denied providing care. In discovery responses, Tri-State has clarified that it "is a business entity and not a medical doctor." Tri-State has also clarified that it "is an entity and does not provide medical care[,] treatment, or diagnosis." In light of these statements by Tri-State, the Jorgensens argue that Tri-State cannot claim to be a health care provider in the ordinary sense of that term. And it is true that we usually give statutory words their ordinary meanings. As noted, though, the ordinary-meaning rule must yield when the legislature has defined its words. *Iowa Dist. Ct.*, 889 N.W.2d at 471. When the legislature defines its words, we must apply those definitions. *Id.* And here the legislature has specifically defined "health care provider" to include clinics. *See* Iowa Code § 135P.1(3). So because Tri-State operates as a clinic, it is also a "health care provider." The second criterion is satisfied.

3. *"Profession," "occupation," or "in patient care."* We turn next to the third criterion: whether the action is "based upon the alleged negligence in the practice

of that *profession* or *occupation* or *in patient care.*" *Id.* § 147.140(1)(*a*) (emphasis added). In their brief, the defendants say that this requirement is met because the Jorgensens' "negligent retention claim is . . . 'based upon the alleged negligence in the practice of [Tri-State's] profession or occupation or in patient care.'" (Alteration in original) (quoting Iowa Code § 147.140(1)(*a*)). But the defendants' brief does not contain arguments about the "profession" option or the "in patient care" option. Instead, the defendants' brief only contains an argument about the "occupation" option. Following the defendants' lead, we only consider the "occupation" option as it is argued in the defendants' brief. *See Iowa Ass'n of Bus. & Indus. v. City of Waterloo*, 961 N.W.2d 465, 480 (Iowa 2021) (McDonald, J., concurring in part and dissenting in part) (discussing "the party-presentation rule," a "fundamental doctrine of appellate review"); *see also Sager v. Farm Bureau Mut. Ins.*, 680 N.W.2d 8, 14 (Iowa 2004) (noting that, under our "adversarial" system, "we generally consider only questions argued by the parties"; as a result, our opinions "should not be understood as all-encompassing court-approved treatises on a given body of law" (emphasis omitted)), *superseded by statute on other grounds*, 2005 Iowa Acts ch. 70, §§ 19–21 (codified at Iowa Code § 515.109 (2007)).

The defendants begin their "occupation" argument by noting that the legislature has not specifically defined "occupation." *See* Iowa Code § 147.1. As a result, "occupation" must be given its ordinary meaning. And, according to the defendants, the ordinary meaning of "occupation" should be found in *Black's Law Dictionary. Black's* defines "occupation" to mean "[a]n activity or pursuit in which a person engages; esp., a person's usual or principal *work or business.*" *Occupation, Black's Law Dictionary* 1298 (11th ed. 2019) [hereinafter *Black's*] (emphasis added). And the Jorgensens' negligent retention claim is premised on the idea that Tri-State's "work or business" includes hiring and retaining

surgeons. It follows, the defendants say, that the Jorgensens' negligent retention claim alleges "negligence in the practice of" Tri-State's "occupation." Iowa Code § 147.140(1)(*a*).

We reach a different conclusion. We agree that because the legislature has not provided a specific definition of "occupation," we must give that term its common, ordinary meaning in the appropriate context. In our view, though, the common, ordinary meaning of "occupation" only encompasses the pursuits of natural persons, that is, human beings. It does not encompass the pursuits of entities like Tri-State.

This view is supported by *Black's*, on which the defendants rely. *See Occupation, Black's* at 1298. As noted, *Black's* defines "occupation" to mean "[a]n activity or pursuit in which *a person* engages; esp., *a person*'s usual or principal work or business." *Id.* (emphasis added). Twice in a row, the *Black's* definition refers to the activities of "a person." *Id.* And in the same volume, *Black's* defines "person" to mean "[a] human being," that is, a "natural person." *Person, id.* at 1378 (emphasis omitted); *see also Edwards v. New Century Hospice, Inc.*, 535 P.3d 969, 974 (Colo. 2023) ("Black's Law Dictionary defines 'person' as '[a] human being' or a 'natural person.'" (alteration in original)). This suggests that an "occupation" is something pursued by individual humans, not entities.

This view also finds support in ordinary English dictionaries. For instance, *The Britannica Dictionary* defines "occupation" to mean "the work that *a person* does" or "*a person*'s job." *Occupation, The Britannica Dictionary* [hereinafter *Britannica*] (emphasis added), https://www.britannica.com/dictionary/occupation [https://perma.cc/2L86-2XC2].

*Merriam-Webster* defines "occupation" to mean "an activity in which *one* engages" or "the principal business of *one*'s life." *Occupation, Merriam-Webster*

[hereinafter *Merriam-Webster*] (emphasis added), https://www.merriam-webster.com/dictionary/occupation [https://perma.cc/X3YS-D944].

*Dictionary.com* defines "occupation" to mean "*a person*'s usual or principal work or business, especially as a means of earning a living; vocation." *Occupation, Dictionary.com* [hereinafter *Dictionary.com*] (emphasis added), https://www.dictionary.com/browse/occupation [https://perma.cc/S5LN-PFS9].

*Collins* says that "[*y*]*our* occupation is your job or profession." *Occupation, Collins* [hereinafter *Collins*] (emphasis added and omitted), https://www.collinsdictionary.com/us/dictionary/english/occupation.

*Cambridge Dictionary* defines "occupation" to mean "*a person*'s job." *Occupation, Cambridge Dictionary* [hereinafter *Cambridge*] (emphasis added), https://dictionary.cambridge.org/dictionary/english/occupation [https://perma.cc/378F-5YT4].

All of these definitions describe the efforts of individual humans ("one" "a person" "your"), not entities. This suggests that "occupation" usually means the efforts of humans, not entities.

This view is confirmed by the examples supplied in the dictionaries just mentioned. For instance, *Britannica* provides these examples:

- "He is thinking about changing *occupations* and becoming a police officer."

- "What's your *occupation*?" "I'm a stay-at-home mom."

- "She listed her *occupation* as 'writer' on the form. [=she wrote 'writer' on the part of the form that asked what she did for work]"

*Occupation, Britannica.*

*Merriam-Webster* provides these examples:

- "Pursuing pleasure has been his major *occupation*."
- "Teaching was her *occupation*."

*Occupation, Merriam-Webster.*

*Dictionary.com* provides this example: "Her occupation was dentistry." *Occupation, Dictionary.com* (emphasis omitted). *Collins* provides this example: "I suppose I was looking for an occupation which was going to be an adventure." *Occupation, Collins* (emphasis omitted). *Cambridge* provides these examples:

- "In the space marked 'occupation' she wrote 'police officer[.]' "

- "Occupations experiencing shortages will need an average of 47% more graduates to meet demand."

*Occupation, Cambridge* (emphasis omitted).

All of these examples are about occupations pursued by individual humans. None of these examples is about an entity.

Of course, we cannot say that the word "occupation" is never used in connection with entities. For instance, entities sometimes incur "occupation taxes." *Bump v. Dist. Ct.*, 5 N.W.2d 914, 919 (Iowa 1942). But we see no reason to think that those specialized applications are particularly relevant in the context of section 147.140. *See Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 650 (Iowa 2021) ("Words bear their ordinary meanings unless the context indicates that a technical meaning applies."). Rather, like the defendants, we think the ordinary meaning of "occupation" applies here. And for the reasons explained, we believe that ordinary meaning has to do with humans, not entities.

All things considered, then, we conclude that in the context of section 147.140, the term "occupation" does not encompass the activities of entities such as Tri-State. *See* Iowa Code § 147.140(1)(*a*). Accordingly, we must reject the defendants' argument that the Jorgensens' "negligent retention claim is . . . 'based upon the alleged negligence in the practice of [Tri-State's] . . . occupation.' " (Alteration in original) (quoting Iowa Code § 147.140(1)(*a*)).

4. *Conclusion regarding Iowa Code section 147.140.* Based on the particular arguments and record before us, we conclude that section 147.140's third criterion is not satisfied in this case. Iowa Code § 147.140(1)(*a*). As a result, we must conclude that section 147.140 does not apply to the Jorgensens' negligent retention claim and, therefore, section 147.140 did not require the district court to grant summary judgment. *Id.* In light of this conclusion, we need not address section 147.140's fourth criterion, that is, "a cause of action for which expert testimony is necessary to establish a prima facie case." *Id.*; *see also Est. of Butterfield v. Chautauqua Guest Home, Inc.*, 987 N.W.2d 834, 839 (Iowa 2023) (addressing section 147.140's prima-facie-case requirement).

5. *Our opinion in* Struck v. Mercy Health Services-Iowa Corp. In light of our conclusion that section 147.140 does not apply to the Jorgensens' negligent retention claim, we believe it is appropriate to mention our opinion in *Struck*, 973 N.W.2d 533. In *Struck*, we made these observations:

> [T]he district court correctly ruled that Iowa Code section 147.140 applied to Struck's negligent hiring and retention claims against Mercy. To recover under that theory, "an injured party must show the employee's underlying tort or wrongful act caused a compensable injury, in addition to proving the negligent hiring, supervision, or retention by the employer was a cause of those injuries." "In other words, the injured party must prove a case within a case." Because Struck's underlying professional negligence claims against the individual healthcare professionals were properly dismissed under section 147.140(6), she cannot prove her case within a case to establish Mercy's liability for wrongfully hiring or retaining them.
>
> Other courts have held pre-suit requirements and limitations including a certificate of merit apply to the patient's negligent retention claims against the hospital. Struck cites no contrary authority.

*Id.* at 544 (citations omitted) (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 172 (Iowa 2004), *overruled in part on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)).

There may appear to be some tension between these comments from *Struck*, on one hand, and our conclusion today that section 147.140 does not apply to the Jorgensens' negligent retention claim. But there are important differences between this case and *Struck*. *See id.* at 537–38. In *this* case, the issue is whether section 147.140 required the Jorgensens to serve a certificate of merit affidavit concerning *the employer*'s negligence in retaining a particular employee-caregiver. *Struck* did not address that issue. *See id.* Rather, *Struck* turned on the plaintiff's failure to serve certificate of merit affidavits concerning the negligence *of employee-caregivers*, the "case within a case." *Id.* at 544. And there is no similar case-within-a-case problem before us here. Unlike in *Struck*, it is undisputed that the Jorgensens timely served a certificate of merit affidavit concerning the negligence of the relevant employee-caregiver, Dr. Smith.

In short, *Struck* is plainly distinguishable both as to its facts and as to the legal issues involved. *See id.* at 537–38, 544. So we need not resolve any potential tension between our approach in *Struck* and our conclusions here. If some future case should require us to revisit the issue, we will do so then. For now, "[w]e decide only the case before us." *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 596 (Iowa 2015).

Along similar lines, we emphasize that this opinion does not announce any categorical rule as to whether or not plaintiffs in negligent retention cases must serve certificate of merit affidavits that address the negligence of employers. Rather, by way of conscious repetition, we have decided only the case before us—based on the record and arguments before us. We will decide future cases based on the record and arguments presented then.

**C. Iowa Code Section 668.11.** We turn now to section 668.11. Iowa Code § 668.11. When section 668.11 applies, it requires the parties to certify experts within specified time frames. *Id.* According to its plain text, though, section

668.11 can only apply to "professional liability case[s] brought against a licensed professional." *Id.* § 668.11(1). And based on the arguments and record before us, we cannot conclude that Tri-State is a "licensed professional" for purposes of section 668.11. *Id.*; *cf. Landes v. Women's Christian Ass'n*, 504 N.W.2d 139, 142 (Iowa Ct. App. 1993) (noting (but not deciding) a question as to whether a hospital was a "licensed professional" within the meaning of section 668.11). So we do not conclude that section 668.11 required the district court to grant summary judgment.

**D. Disposition.** For the reasons explained, we conclude that summary judgment was not required by section 147.140 or section 668.11. We affirm and remand for further proceedings.

**E. Issues Likely to Arise on Remand.** We emphasize that our decision today is limited to procedural issues concerning the expert-disclosure requirements of section 147.140 and 668.11. We have not decided substantive questions. Among other things, we have not decided whether expert testimony would be necessary to support a jury verdict that Tri-State was negligent in retaining Dr. Smith as a surgeon. The district court will decide that substantive issue in the first instance.

Even so, we acknowledge the interplay between the procedural requirements of section 147.140 and 668.11, and the substantive question of what expert testimony will be necessary for trial. Indeed, the latter issue has already been addressed at some length in the district court. It is also addressed at some length in the parties' appellate briefs. And, of course, we expect the issue is likely to arise again on remand as the case proceeds to trial. So we believe some guidance on this issue is appropriate. *See, e.g.*, *Thornton v. Am. Interstate Ins.*, 897 N.W.2d 445, 471–72 (Iowa 2017) (addressing issues that had been "fully briefed" by the parties that "are likely to arise on remand").

We start with the (perhaps obvious) observation that negligent retention cases can involve a variety of issues. Some of those issues may require expert testimony, depending on the facts of the case. For instance, as suggested in *Struck*, a claim that a clinic negligently retained a surgeon may require the plaintiff to show *both* the surgeon's "underlying tort or wrongful act caused a compensable injury," *and also* that the clinic's negligent retention of the surgeon was a proximate cause of the injury. 973 N.W.2d at 544 (quoting *Kiesau*, 686 N.W.2d at 172). That first requirement creates a "case within a case," that is, a surgical malpractice case within the broader negligent retention case. *Id.* And surgical malpractice cases often require expert testimony to establish a surgeon's negligence. *See, e.g., Bazel v. Mabee*, 576 N.W.2d 385, 387 (Iowa Ct. App. 1998) ("Most medical malpractice lawsuits are so highly technical they may not be submitted to a fact finder without medical expert testimony supporting the claim."). If expert testimony concerning the surgeon's negligence is not available, then the case within a case may be unsustainable, and the negligent retention claim may fail as a result. *Struck*, 973 N.W.2d at 544.

Of course, there are exceptions. Sometimes a surgeon's negligence can be established without expert testimony because the surgeon's "lack of care is so obvious as to be within the comprehension of" ordinary citizens. *Id.* at 539 n.4 (quoting *Oswald v. LeGrand*, 453 N.W.2d 634, 636 (Iowa 1990)). For example, expert testimony may not be necessary in "a malpractice action alleging the surgeon removed the wrong kidney or inadvertently left a clamp inside the patient's body." *Id.* In those cases, it may be that the case within a case can be established without an expert. *Id.* at 544. If so, then expert testimony about the surgeon's negligence may not be necessary to establish the larger negligent retention claim. *See id.*

But even when there is ample evidence of the surgeon's negligence, expert testimony may still be necessary as to other issues. For instance, some negligent retention cases may require separate expert testimony as to *the employer's negligence in *retaining* the surgeon. *Id.* For one thing, to establish that an employer was negligent in *retaining* a surgeon, the plaintiff must show that the surgeon was *unfit* to serve as a surgeon. *Cf. Godar v. Edwards*, 588 N.W.2d 701, 708 (Iowa 1999) (noting that negligent hiring cases require proof that the employer knew or should have known "of its employee's unfitness" (quoting 27 Am. Jur. 2d *Employment Relationship* § 473, at 913–14 (1996))). And the question of whether a surgeon was fit to practice surgery may well require expert testimony. After all, we've long understood that surgery is a highly specialized profession. *See Welte v. Bello*, 482 N.W.2d 437, 440 (Iowa 1992) (en banc) ("We have long recognized 'in most cases a layman can have no knowledge whether . . . the proper surgical treatment was given.'" (quoting *Evans v. Roberts*, 154 N.W. 923, 926 (Iowa 1915))). And so the question of whether a surgeon is fit to practice surgery is usually beyond the knowledge and experience of ordinary citizens. Usually, then, expert testimony will be needed to establish a surgeon's unfitness.

At the same time, though, we can anticipate exceptions. No expert will be needed if the surgeon's unfitness is "so obvious as to be within the comprehension of" ordinary citizens. *Struck*, 973 N.W.2d at 539 n.4 (quoting *Oswald*, 453 N.W.2d at 636). To choose an extreme example, if a surgeon had been openly abusing patients in the surgical suite, the surgeon's unfitness would be sufficiently obvious to fall within the comprehension of ordinary citizens. No expert testimony would be necessary to show that the surgeon was unfit.

Even when the record clearly shows that a surgeon was unfit, though, expert testimony could still be necessary for other issues. For example, expert

testimony could still be necessary to show that a clinic or other health care provider should have known that a surgeon was unfit and, therefore, should have discharged the surgeon. *Cf. Rieder v. Segal*, 959 N.W.2d 423, 431 (Iowa 2021) ("The plaintiff in a negligent credentialing claim must present expert testimony establishing that the defendant deviated from the applicable standard of care to raise a genuine issue of material fact." (quoting *Brookins v. Mote*, 292 P.3d 347, 364 (Mont. 2012))). We emphasize that, in this context, the determination of whether expert testimony is needed should not depend on labels, such as whether hiring or firing a surgeon can be characterized as an "administrative" task. Rather, the necessity of expert testimony depends on whether "the proper course of action" is "within the common understanding of the jury." *Thompson v. Embassy Rehab. & Care Ctr.*, 604 N.W.2d 643, 646 (Iowa 2000). Put another way, it depends on whether "all the primary facts can be accurately and intelligibly described to the jury," and whether "they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are" expert witnesses. *Est. of Butterfield*, 987 N.W.2d at 842 (alteration in original) (quoting *Struck*, 973 N.W.2d at 543). If not, expert testimony is necessary. *See id.*

**III. Conclusion.**

We affirm and remand for further proceedings.

**AFFIRMED AND REMANDED.**